IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 16, 2023 Session

## MAGNOLIA POINTE HOMEOWNERS' ASSOCIATION v. KATHRYN MITCHELL

### Appeal from the Chancery Court for Knox County
No. 202567-3        Christopher D. Heagerty, Jr., Chancellor

---

### No. E2022-01581-COA-R3-CV

---

A homeowner's association sought to enforce a recorded declaration of restrictive covenants against a property owner in a subdivision. The property owner moved to dismiss on the basis that the declaration did not appear in her chain of title and did not expressly apply to her property. The HOA contended that language in the property owner's chain of title was sufficient to make the property subject to the restrictive covenants. And if not, the restrictive covenants were enforceable as equitable servitudes. Without notice to the parties, the trial court dismissed the action on an unasserted basis. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Knox County Chancery Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON II, J., joined.

W. Tyler Chastain, Knoxville, Tennessee, for the appellant, Magnolia Pointe Homeowner's Association.

Howard B. Jackson, Knoxville, Tennessee, for the appellee, Kathryn Mitchell.

**OPINION**

**I.**

Kathryn Mitchell owns Lot 30 in Magnolia Pointe Subdivision. All property owners in the subdivision are members of the Magnolia Pointe Homeowner's Association

("HOA"). The HOA, through its Board of Directors, administers and enforces the restrictive covenants that govern the subdivision.

In the spring of 2021, Ms. Mitchell placed a large yard ornament "with the features of a water fountain" in her front yard. The HOA sent her written notice that her property was in violation of Article XII, Section 4 of the Declaration of Covenants and Restrictions of Magnolia Pointe Subdivision. Section 4 prohibited "[o]utlandish rock gardens, statues and/or yard ornaments greater than three feet (3 ft.) in height and three feet (3 ft.) in width . . . in [the] front yard area." The HOA claimed that Ms. Mitchell's yard ornament exceeded the height and/or width restriction in the restrictive covenant. And it warned her that if she did not remove the yard ornament within ten days, the HOA would pursue legal action.

When Ms. Mitchell did not comply, the HOA filed suit. It alleged that Ms. Mitchell's property was subject to the Declaration. And she was in violation of the size restriction on yard ornaments in the front yard area. It asked for a permanent injunction requiring Ms. Mitchell to remove the unauthorized yard ornament. It also sought an award of attorney's fees and costs.

Ms. Mitchell moved to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* TENN. R. CIV. P. 12.02(6). She argued that the Declaration could not be enforced against her property because it was not recorded within her chain of title. And the original Declaration did not specify that it applied to her property.

The HOA filed an amended complaint. It alleged that the Declaration, as later amended, expressly applied to all lots within Magnolia Pointe Subdivision. The amendments were recorded well before Ms. Mitchell purchased her property. And her chain of title contained multiple references to the applicable restrictions of record in the Knox County Register's Office, which would include the amended Declaration. The HOA also alleged that before the purchase, Ms. Mitchell's real estate agent specifically informed her that all "lots in the Magnolia Pointe Subdivision were subject to the restrictions adopted and enforced by the Magnolia Pointe Homeowners' Association." So she had actual or, at the very least, inquiry notice that her property was subject to the restrictive covenants. And for several years, she attended HOA meetings and timely paid her annual assessments.

Ms. Mitchell responded with another motion to dismiss. She contended that the general references in her chain of title were insufficient to subject her property to the Declaration. And the Declaration was not created effectively. The original Declaration failed to identify the burdened property. According to Ms. Mitchell, the developer did not remedy this omission until after the sale of Lot 30 to her predecessor in title. So her actual knowledge of the inapplicable restrictions was irrelevant.

The HOA insisted that the Declaration was properly recorded in Ms. Mitchell's chain of title. But, if not, the Declaration could be enforced as an equitable servitude.

2

After considering the parties' arguments, the trial court ruled that the restrictive covenant at issue was unenforceable for a different reason. In the court's view, the modifier "outlandish" inserted a "fatal degree of ambiguity into the restrictive covenant." The term was inherently subjective and thus "capable of being fairly understood in more ways than one." Because restrictive covenants must be strictly construed, this ambiguity precluded enforcement of the restrictive covenant "regardless of the contentions of [the HOA] concerning the height and width of the statue itself." So it dismissed the amended complaint.

## II.

The HOA complains that it never had an opportunity to address the merits of the dismissal. It also challenges the basis for the court's decision. Ms. Mitchell maintains that the court had the authority to dismiss the amended complaint on an unasserted basis. And even if the court's reasoning was erroneous, it reached the right result. So she asks us to affirm the dismissal on alternative grounds.

A motion to dismiss for failure to state a claim "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). With limited exceptions,[1] the court confines its review to the operative complaint. *Id.* It "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31 (Tenn. 2007) (citation omitted). The motion should be denied unless "it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Lab'ys Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002). The trial court's decision on a 12.02(6) motion presents a question of law, which we review de novo with no presumption of correctness. *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); TENN. R. APP. P. 13(d).

---

[1] Under certain circumstances, materials beyond the pleadings may be considered without converting a Rule 12.02(6) motion into a motion for summary judgment. *See Robinson v. City of Clarksville*, 673 S.W.3d 556, 566 (Tenn. Ct. App.), *perm app. denied*, (Tenn. May 10, 2023). Here, the parties relied on the final plat, the Declaration and its amendments, and the relevant warranty deeds. These materials may be considered because they were attached as exhibits to the complaint or were matters of public record. *See Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 322 n.4 (Tenn. 2021); *Reliant Bank v. Bush*, 631 S.W.3d 1, 6 (Tenn. Ct. App. 2021); *Pagliara v. Moses*, 605 S.W.3d 619, 625 (Tenn. Ct. App. 2020); TENN. R. CIV. P. 10.03. The HOA also submitted several affidavits in opposition to the motion to dismiss. The affidavits went beyond the pleadings and could not be considered using the Rule 12.02(6) standard. *See Patton v. Est. of Upchurch*, 242 S.W.3d 781, 786-87 (Tenn. Ct. App. 2007). We did not consider the affidavits in our decision.

3

## A.

The HOA sought to enforce a restrictive covenant in a recorded declaration. It claimed that Ms. Mitchell's yard ornament violated the Declaration's size restrictions. For purposes of her motion, Ms. Mitchell agreed that her yard ornament violated the restriction, but she asserted that the Declaration was not created effectively. So it could not be enforced against her property as an express restrictive covenant or an equitable servitude. The parties hotly debated this issue. But instead of resolving the issue presented by the parties, the trial court dismissed the amended complaint on a basis neither party anticipated.

A trial court has the authority to dismiss a complaint "when he is of the opinion that the complaint fails to state a claim upon which relief may be granted." *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975). But surprise dismissals are "not to be encouraged." *Id.* Before dismissing a lawsuit, the court should give the parties notice that it is considering such a drastic step. *Regions Bank v. Prager*, 625 S.W.3d 842, 849 n.6 (Tenn. 2021); *see also Justice v. Nelson*, No. E2018-02020-COA-R3-CV, 2019 WL 6716300, at *5 (Tenn. Ct. App. Dec. 10, 2019) (emphasizing the importance of fair procedures when considering dismissal of a lawsuit). A court's dismissal power "must be exercised most sparingly and with great care that the right of the respective parties to a hearing shall not be denied or impaired." *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 731 (Tenn. 1978).

We conclude that the court erred in dismissing this action without affording the HOA a full and fair opportunity to defend against the basis for the dismissal. Ms. Mitchell never argued that the restrictive covenant was ambiguous. Nor did she challenge the HOA's interpretation of the restriction. And the court did not share its concerns before it dismissed the action. *Cf. Patton v. Est. of Upchurch*, 242 S.W.3d 781, 791 (Tenn. Ct. App. 2007) (affirming dismissal in the absence of a motion where the party against whom judgment was rendered was not surprised and had a full and fair opportunity to address the merits of the dismissal); *Harris v. Jain*, No. E2008-01506-COA-R3-CV, 2009 WL 2734083, at *4 (Tenn. Ct. App. Aug. 31, 2009) (affirming dismissal where the movant's motion to dismiss was vague as to the grounds, but the nonmovant fully understood the basis for the motion).

Even so, Ms. Mitchell contends that we should affirm the court's decision on alternative grounds. *See Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984) (reasoning that "a correct judgment . . . should not be reversed on appeal merely because it was based upon an insufficient or wrong reason.").

4

## B.

Ms. Mitchell argues that the Declaration cannot be enforced against her property under any legal theory because it was not effectively created. To bind a remote grantee, a restrictive covenant must "run with the land." *Phillips v. Hatfield*, 624 S.W.3d 464, 473 (Tenn. 2021); RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.1 (AM. L. INST. 2000). A covenant runs with the land "if it is intended to do so, has been effectively created, is not invalid . . . , and has not terminated . . . ." *Phillips*, 624 S.W.3d at 473; RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.3 cmt. a (AM. L. INST. 2000).

A property owner may create express restrictive covenants through the conveyance of a lot in a subdivision subject to a recorded declaration of restrictive covenants for the subdivision. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 475 (Tenn. 2012); RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.1 (AM. L. INST. 2000). Here, after recording the Declaration, the developer conveyed several lots, including Lot 30, to Ayer, LLC subject to "any and all applicable restrictions" of record in the Knox County Register's Office. The warranty deed did not expressly reference the Declaration. But an express reference was "not necessary to create a servitude" if the Declaration applied to Lot 30. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.1 cmt. c (AM. L. INST. 2000).

Ms. Mitchell contends that the Declaration, as originally recorded, failed to identify the burdened property. We agree. We interpret the Declaration according to its plain meaning as we would any other contract. *See Hughes*, 387 S.W.3d at 475-76. And the Declaration specified that the existing real property "which is, and shall be, held, transferred, sold, conveyed and occupied subject to this Declaration is described in Exhibit A hereto." The HOA concedes that Exhibit A was never recorded. Although the Declaration contained a procedure for subjecting additional property to the restrictive covenants, the HOA did not allege that this procedure was used in connection with Lot 30.

The deed to Ayer, LLC incorporated by reference the recorded final plat for Magnolia Pointe Subdivision. But the final plat did not indicate that the subdivision was subject to a recorded declaration. And at the time of this conveyance, the Declaration did not refer to the final plat.

5

We recognize that the Declaration was amended before Ms. Mitchell purchased Lot 30. The first two amendments referenced the recorded final plat. And the third amendment added a precise description of the burdened property.[2] But these amendments were recorded after the developer conveyed Lot 30 to Ms. Mitchell's predecessor in title. The developer lacked the authority to impose restrictions on Lot 30 after it was sold. *Phillips*, 624 S.W.3d at 476.

Because the Declaration purported to create express restrictive covenants, we must construe it strictly. *Hughes*, 387 S.W.3d at 481. By its plain terms, the original Declaration applied solely to the real property described in a missing exhibit. The developer did not remedy this problem until after Lot 30 was sold. So the developer did not effectively create an express servitude burdening Lot 30. *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.1 (AM. L. INST. 2000).

Still, restrictive covenants may also be created by implication.[3] *Id.*; *Arthur v. Lake Tansi Vill., Inc.*, 590 S.W.2d 923, 927 (Tenn. 1979). Our courts have enforced implied servitudes in three circumstances: "(1) implication by necessity, (2) implication by conveying property with restrictions under a general plan or scheme of development, [and] (3) implication by reference to a plat." *Arthur*, 590 S.W.2d at 927.

The amended complaint contains allegations of fact that would support an implied servitude based on a common development plan. *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.14 (AM. L. INST. 2000). Parties seeking to enforce implied servitudes under this theory "must prove: (1) that the parties derived their titles from a common grantor; (2) that the common grantor had a general plan for the property involved; (3) that the common grantor intended for the restrictive covenant to benefit the property involved; and (4) that the grantees had actual or constructive knowledge of the restriction when they

---

[2] The third amendment specified that the existing real property subject to the Declaration "is located in Knox County, Tennessee, and commonly to referred as Magnolia Pointe Subdivision, the plat of which Subdivision is of record as Instrument Numbers 200405140104838, 200405140104839, and 200405140104840, all of record in the Registers Office for Knox County, Tennessee."

[3] Our courts often use the term "equitable servitude" to describe servitudes that arise by implication. *See, e.g.*, *Land Devs., Inc. v. Maxwell*, 537 S.W.2d 904, 913 (Tenn. 1976) (explaining that restrictive covenants arising from a common development plan may be enforced as equitable servitudes); *Essary v. Cox*, 844 S.W.2d 169, 172 (Tenn. Ct. App. 1992) ("In cases involving a common development plan, . . . [Tennessee] courts have demonstrated a willingness to enforce restrictive covenants, in the form of equitable servitudes, under the rationale that a remote grantee's knowledge of such restrictions may be imputed from the existence of a common plan as evidenced in deeds or on the plat itself."); *Stracener v. Bailey*, 737 S.W.2d 536, 539 (Tenn. Ct. App. 1986) (enforcing restrictions noted on a plat as equitable servitudes).

purchased their parcels." *Massey v. R.W. Graf, Inc.*, 277 S.W.3d 902, 910 (Tenn. Ct. App. 2008).

Citing a previous decision of this Court, Ms. Mitchell contends that the common development plan theory cannot apply here because the developer expressly reserved the right to change the Declaration. *See Lutzak v. Phoenix Am. Dev. Partners, L.P.*, No. M2015-02117-COA-R3-CV, 2017 WL 4685300, at *7 (Tenn. Ct. App. Oct. 18, 2017) (concluding that the trial court properly declined to impose an implied servitude based on the common plan doctrine "[b]ecause [the developer] reserved the right to change the common plan"). Ms. Mitchell's reliance on the *Lutzak* decision is misplaced.

The common plan theory arose to protect purchasers who reasonably relied on a developer's representations that the restricted property they purchased was part of a general plan of development. *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.14 cmt. b (AM. L. INST. 2000). "If the purchasers have reasonably relied on the implied representations that all lots will be sold subject to the general-plan restrictions, and injustice can only be avoided by establishment of the implied servitude, the purchasers are entitled to the protection of an implied reciprocal servitude burdening the lots remaining in the developer's hands." *Id.* § 2.14 cmt. i. But the developer in *Lutzak* expressly reserved the right to add or remove property from the subdivision. *Lutzak*, 2017 WL 4685300, at *7. This reservation "undercut[] any argument that equity should enforce the plan." *Id.*

Here, the developer did not reserve the right to add or subtract property from the subdivision. And while the developer's right to "annul, waive, change or modify" the restrictions in the Declaration may militate against the imposition of an implied servitude, it does not preclude the HOA from pursuing this legal theory at this juncture.[4]

Unlike our previous decision in *Lutzak*, we decide this issue in the context of a Rule 12.02(6) motion to dismiss. Thus, we must construe the complaint liberally, presume all factual allegations to be true, and give the plaintiff the benefit of all reasonable inferences.

---

[4] As our supreme court has recognized, the Restatement suggests that this doctrine "ordinarily does not come into play when the developer records a declaration of servitudes applicable to an entire general-plan area." *Phillips*, 624 S.W.3d at 478 n.16 (citing RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.14 cmt. i (AM. L. INST. 2000)). "[T]here is no need to imply the existence of a general plan or the application of restrictions to land not otherwise mentioned in relevant documents—such as deeds—because the written declaration precisely evidences the intent to subject specific parcels of land to the servitudes pursuant to a general plan." *Id.* Here, that precise evidence is lacking. So the HOA may be able to establish grounds for an implied servitude. *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.11 cmt. b (AM. L. INST. 2000) (explaining that implied servitudes arose to avoid the unfairness that resulted from a failed attempt to create an express servitude).

*See Tigg*, 232 S.W.3d at 31. Given this standard, we conclude that the amended complaint contains sufficient factual allegations to survive the motion to dismiss. So we decline to affirm the court's decision on alternative grounds.

C.

Relying on the enforcement provision in the Declaration, as amended, the HOA requests an award of attorney's fees incurred in this appeal. The HOA is not entitled to recover attorney fees under the Declaration. As explained above, the Declaration does not apply to Ms. Mitchell's lot. So neither does its enforcement provision.

**III.**

Because the non-moving party did not have a fair opportunity to address the basis for the court's dismissal, we reverse the judgment. We remand for further proceedings consistent with this opinion.

s/ W. Neal McBrayer<br>W. NEAL McBRAYER, JUDGE

8